# No. 25-20086

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

ROBERT FLETCHER,

PLAINTIFF – APPELLANT

V.

EXPERIAN INFORMATION SOLUTIONS, INCORPORATED;
BRIDGECREST CREDIT COMPANY, L.L.C.,

DEFENDANTS – APPELLEES

**On Appeal from**
United States District Court for the Southern District of Texas
4:24-CV-370

## BRIEF OF APPELLANT ROBERT FLETCHER

Heather Hersh
TX Bar Number 24025426
Jaffer & Associates, P.L.L.C.
5301 Alpha Road, Suite 80-5
Dallas, TX 75240
T: (214) 945-0000
F: (469) 669-0786
www.jaffer.law

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of 5th CIR Rule 28.2.1, are interested in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Bridgecrest Credit Company, L.L.C. | Sabrina Neff of Husch Blackwell, L.L.P. Houston, TX |
| Bridgecrest Credit Company, L.L.C. | Brandon Stein of Husch Blackwell, L.L.P. Phoenix, AZ |
| Experian Information Solutions, Incorporated | Julia Camp of Jones Day Houston, TX |
| Experian Information Solutions, Incorporated | Analeigh Barnes of Jones Day Houston, TX |
| Experian Information Solutions, Incorporated | Nathaniel Garrett of Jones Day San Francisco, CA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Robert Fletcher | Shawn Jaffer of Jaffer Law Firm Dallas, TX |
| Robert Fletcher | Heather Hersh of Jaffer Law Firm Dallas, TX |
| Robert Fletcher | Stephen Jones Plano, TX |

/s/ Heather Hersh
Attorney of record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Fletcher respectfully requests an oral argument in this case involving the imposition of monetary sanctions and the finding of bad faith in advancing allegedly frivolous arguments that prolonged the underlying litigation. This finding is tantamount to serious professional misconduct as "bad faith" is not mere negligence; rather, bad faith is a finding of scienter that reflects adversely on a lawyer's honesty, trustworthiness, and fitness to practice. Thus, oral argument will not only significantly aid the decisional process but also provide Fletcher's attorney with the due process required in cases involving lawyer misconduct. Not only does this appeal deal with a *lack of factual findings,* but the *abruptness* of the hearing of sanctions. This case is one about *fairness to clients and their attorneys in good-faith consumer rights litigation.* The circumstances in this case have a *chilling effect* on FCRA plaintiffs and attorneys if sanctions become a substitute for dispositive motions.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................3

TABLE OF CONTENTS........................................................................................4

TABLE OF AUTHORITIES ................................................................................7

JURISDICTIONAL STATEMENT ....................................................................14

STATEMENT OF THE ISSUES..........................................................................15

STATEMENT OF THE CASE..............................................................................16

SUMMARY OF THE ARGUMENT ....................................................................18

ARGUMENT ........................................................................................................20

A.      Standard of Review……………………………………………………...20

      1.      Rule 11 Sanctions – Abuse of Discretion Review…………………..20

      2.      § 1927 Sanctions – Bad Faith Required…………………………..20

      3.      Inherent Power Sanctions – Heightened Threshold……………...21

      4.      Due Process Violations – De Novo Review………………..…22

B.      The District Court Violated Rule 11 and Due Process by Imposing Sanctions Without Notice or Hearing………………………………………………..…22

4

1.    Violation of Rule 11 Procedures and Due Process………………..25

2.    Lack of Opportunity to Respond……………………………………..26

3.    Attorney-Client Relationship Constraints……………………………...28

4.    Improper Motive and Unsupported Trial Court Findings…………...34

5.    Why Rule 11 Should Not Be Used to Resolve Merits Disputes…….36

C.    Jaffer's Pre-Filing Investigation Was Objectively Reasonable Under the "Snapshot" Rule……………………………………………………………..36

1.    Rule 11 Imposes a Time-Limited, Objective Standard……………..37

2.    Jaffer Relied on Sworn Law Enforcement Reports…………………39

3.    Bridgecrest's Evidence Was Post-Filing and Non-Dispositive……..40

4.    The Trial Court's Order Lacked Specific Findings or Factual Support……………………………………………………………………44

D.    The Fee Awards Were Excessive, Improperly Documented, and Unsupported………………………………………………………………44

1.    Rule 11 Requires "Appropriate" Sanctions—Not Automatic Full Compensation……………………………………………………………45

2.  The Fee Awards Were Excessive Given the Early Case Posture……….47

3.  Billing Judgment Was Not Exercised…………………………..48

4.  The District Court Failed to Make Specific Findings…………………..49

5.  Defendants Failed to Segregate Recoverable Fees……………………..49

6.  Unreasonable Time Entries and Block Billing…………………….....50

E.    The § 1927 Sanctions Against Fletcher's Counsel Were Improper………..50

      1.      Sanctions Require Specific Findings of Bad Faith…………………52

      2.      Jaffer Did Not Multiply Proceedings………………………………55

      3.      The Litigation Conduct Was Reasonable and Good-Faith…………57

      4.      Experian Failed to Confer as Required by Local Rule 7.1…………59

F.     The Court Made No Specific Findings Supporting the Sanctions Order…..60

CONCLUSION .......................................................................................64

CERTIFICATE OF SERVICE ...............................................................66

CERTIFICATE OF COMPLIANCE ......................................................67

# TABLE OF AUTHORITIES

**Cases**

*Baulch v. Johns,*
70 F.3d 813 (5th Cir. 1995)…………………………………………....…..52, 54

*Boddie v. Connecticut,*
401 U.S. 371 (1971)…………………………………………….……..….26

*Bogney v. Jones,*
904 F.2d 272 (5th Cir. 1990)…………………………………....…………62

*Breen v. Beto,*
421 F.2d 945 (5th Cir. 1970)……………………………………………...28

*Browning v. Kramer,*
931 F.2d 340 (5th Cir. 1991)…………………………..…………20, 24, 53, 54, 55

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991)……………………………………………………21, 22, 53, 59

*Chapman & Cole v. Itel Container Int'l B.V.,*
865 F.2d 676 (5th Cir. 1989)……………………………………………….…..45

*Chaves v. M/V Medina Star,*
47 F.3d 153 (5th Cir. 1995)……………………………………...……...23, 24

*Childs v. State Farm Mut. Auto. Ins. Co.,*
29 F.3d 1018 (5th Cir. 1994)…………………………………………...26, 27, 37

*City of San Benito v. Rio Grande Valley Gas Co.,*
109 S.W.3d 750 (Tex. 2003)………………………………………………...29

*Clark v. Emp. Funding of Am., LLC (In re Syngenta Prods. Liab. Litig.),*
2024 U.S. Dist. LEXIS 99782 (S.D. Tex. 2024)………………...……...……...46

*Coghlan v. Starkey,*

852 F.2d 806 (5th Cir. 1988) …………………………………………………...55

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990)………………………………………………………..20, 24

*Crowe v. Smith,*
151 F.3d 217 (5th Cir. 1998)…………………………………..…...22, 51

*Donaldson v. Clark,*
819 F.2d 1551 (11th Cir. 1987)………………………………………..26

*Edwards v. General Motors Corp.,*
153 F.3d 242 (5th Cir. 1998)…………………………………..………..54

*Elliott v. Tilton,*
64 F.3d 213 (5th Cir. 1995)……………………..………………..............22

*F.D.I.C. v. Calhoun,*
34 F.3d 1291 (5th Cir. 1994)……………………..…………20, 54, 55

*FDIC v. Conner,*
20 F.3d 1376 (5th Cir.1994)…………………………………………………55

*FDIC v. Maxxam, Inc.,*
523 F.3d 566 (5th Cir. 2008)……………………………………………...22

*Flowers v. Wiley,*
675 F.2d 704 (5th Cir. 1982)…………………………………………..48

*Garcia v. Navasota Indep. Sch. Dist.,*
2011 U.S. Dist. LEXIS 60472 (S.D. Tex. 2011)…………………………………38

*Gate Guard Servs., L.P. v. Perez,*
792 F.3d 554 (5th Cir. 2015)……………………………………..…22, 39

*Goldin v. Bartholow,*
166 F.3d 710 (5th Cir. 1999)……………………………..………..23, 36, 44, 63

8

*Gruppo Formstar LLC v. FM Forrest, Inc.,*
587 B.R. 891 (Bankr. S.D. Tex. 2018)…………………………………………31

*Henderson v. Department of Public Safety & Corrections,*
901 F.2d 1288 (5th Cir. 1990)…………………………………………..26, 27

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)…………………………………………...…….....48

*In re Goode,*
821 F.3d 553 (5th Cir. 2016)…………………….…..……………..21, 52

*In re Ritchey,*
512 B.R. 847 (Bankr. S.D. Tex. 2014)…………………………...……………31

*In re Thalheim,*
853 F.2d 383 (5th Cir. 1988)………………………...……………21

*Jones v. UPS,*
460 F.3d 1004 (8th Cir. 2006)…………………………..……………...61

*Kelly v. Murphy,*
630 S.W.2d 759 (Tex. App. - Houston 1982)…………………………………..32

*Kennard Law P.C. v. United Airlines, Inc.,*
2024 U.S. App. LEXIS 19962 (5th Cir. Aug. 8, 2024)……………………...22

*Leroy v. Houston,*
906 F.2d 1068 (5th Cir. 1990)…………………………..……………...47

*Lewis v. La. State Univ.,*
2022 U.S. Dist. LEXIS 181203 (M.D. La. 2022)………………………………38

*LLEH, Inc. v. Wichita Cty.,*
289 F.3d 358 (5th Cir. 2002)…………………………..……………..21

*Marlin v. Moody Nat'l Bank N A,*
533 F.3d 374 (5th Cir. 2008)……………………………..26, 27, 38, 43

*Matta v. May,*
118 F.3d 410 (5th Cir. 1997)……………………………………………...21, 52

*Meadowbriar Home for Children, Inc. v. Gunn,*
81 F.3d 521 (5th Cir. 1996)……………………………………………….54

*Mercury Air Group, Inc. v. Mansour,*
237 F.3d 542 (5th Cir. 2001)……………………………………………….55

*Mid-South Towing Co. v. Har-Win, Inc.,*
733 F.2d 386 (5th Cir. 1984)…………………………………………..…28

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,*
86 F.3d 464 (5th Cir. 1996)……………………………………………….56

*Peak Tech. Servs. Inc. v. Land & Sea Eng'g, LLC,*
2012 U.S. Dist. LEXIS 109628, 2012 WL 3234203 (S.D. Tex. Aug. 6,
2012)………………………………………………………………….46, 47

*Pioneer Bank & Trust v. Reynick,*
2009 SD 3 (S.C. SD 2009)…………………………………………....61, 62

*Portillo v. Cunningham,*
872 F.3d 728 (5th Cir. 2017)……………………………………………...22

*Preston Expl. Co., LP v. GSP, LLC*
2013 U.S. Dist. LEXIS 88786, 2013 WL 3229678 (S.D. Tex. June 25,
2013)………………………………………………………………….46, 47

*Pryor v. U.S. Postal Service,*
769 F.2d 281 (5th Cir. 1985)……………………………………...………31

*Reed v. Iowa Marine and Repair Corp.,*
16 F.3d 82 (5th Cir. 1994)…………………………………………..……..21

*Reliance Ins. Co. v. Sweeney Corp.,*
792 F.2d 1137 (D.C. Cir. 1986)). ………………………………….…..…55

*Ridder v. City of Springfield,*
109 F.3d 288 (6th Cir. 1997)……………………………………...………………28

*Roadway Express, Inc. v. Piper,*
447 U.S. 752 (1980)………………………………………………………....21

*Rodney v. Elliott Sec. Sols., LLC,*
No. 19-11890, 2020 U.S. Dist. LEXIS 148643 (E.D. La. 2020)……..………47, 48

*Rosas v. Comm'n for Lawyer Discipline,*
335 S.W.3d 311 (Tex. App. - San Antonio 2010)………………………………..30

*Rouse v. Target Corp.,*
181 F. Supp. 3d 379 (S.D. Tex. 2016)…………..……………………………...46, 47

*R.T.C. v. Bright,*
6 F.3d 336 (5th Cir. 1993)…………………………………………...………………21

*Saizan v. Delta Concrete Prods. Co.,*
448 F.3d 795 (5th Cir. 2006)……………………………………………...46

*Skidmore Energy, Inc. v. KPMG,*
455 F.3d 564 (5th Cir. 2006)………………………………………..……….38

*Spiller v. Ella Smithers Geriatric Ctr.,*
919 F.2d 339 (5th Cir.1990)…………………………………………...…….26

*Thomas v. Capital Security Services, Inc.,*
836 F.2d 866 (5th Cir.1988)…………………………………………26, 37, 38, 54

*Thompson v. S & S Recovery, Inc.,*
2013 U.S. Dist. LEXIS 133443 (S.D. Miss. Sep. 18, 2013)………………………54

*Tommy Gio, Inc. v. Dunlop,*
348 S.W.3d 503 (Tex. App. - Dallas 2011)………………………..…..…...30, 31

*Topalian v. Ehrman,*
3 F.3d 931 (5th Cir. 1993)……………………………………………….…56

*Travelers Ins. Co. v. St. Jude Hosp., Inc.,*
38 F.3d 1414 (5th Cir. 1994)……………………………………...……….54

*United States v. Beebe,*
180 U.S. 343 (1901)……………………………….……………………...28

*United States v. Vasquez,*
298 F.3d 354 (5th Cir. 2002)………………………………………….…...31

*Veillon v. Exploration Services, Inc.,*
876 F.2d 1197 (5th Cir. 1989)……………………………………….........26

*Veschi v. Stevens,*
861 S.W.2d 291 (Tex. App. – San Antonio 1993)……………………….…….30

*Whitehead v. Food Max of Miss., Inc.,*
332 F.3d 796 (5th Cir. 2003)……………………………………………….20, 52

*Williams v. Lockheed Martin Corp.,*
990 F.3d 852 (5th Cir. 2021)……………………………………………...56

*Willy v. Coastal Corp.,*
855 F.2d 1160 (5th Cir. 1988)……………………………….………..…61, 62

*Woodward v. Epps,*
580 F.3d 318 (5th Cir. 2009)……………………………………...……………31

**Rules**

Federal Rule of Appellate Procedure 4…………………………………….……...14

Federal Rule of Civil Procedure 11……………………………………………

…………….20, 23, 24, 25, 26, 27, 33, 34, 35, 36, 37, 38, 45, 50, 57, 58, 61, 62, 63

Federal Rule of Civil Procedure 12…………………………………………….........27

Local Rule CV-7…………………………………………………………..52

Tex. R. Prof Conduct 1.02……………………………………………………...30

Tex. R. Prof Conduct 1.16……………………………………………………...25

Tex. R. Prof Conduct 8.04……………………………………………………...23

**Statutes**

15 U.S.C. § 1681e(b)……………………………………………………………8

15 U.S.C. § 1681i(a)……………………………………………………………8

15 U.S.C. § 1681p………………………………………………………………8

15 U.S.C. § 1681s-2(b)…………………………………………………………8

28 U.S.C. § 1291………………………………………………………………..8

28 U.S.C. § 1331…………………………………………………………...……8

28 U.S.C. § 1334………………………………………………………………...8

28 U.S.C. § 1927……………………………………………12, 14, 38, 39, 40, 44

**Constitution**

First Amendment to the United States Constitution………………………………13

Fifth Amendment to the United States Constitution………………………...………18

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction according to 28 U.S.C. § 1331, 1334, and 15 U.S.C. § 1681p, which grants the district courts "original jurisdiction of all civil actions arising under the... laws... of the United States." Fletcher's suit was based upon 15 U.S.C. § 1681 *et seq* (the Fair Credit Reporting Act or "FCRA"), which allows consumers damaged by erroneous reporting on their consumer credit reports to sue both the furnishers of that erroneous information under 15 U.S.C. § 1681s-2(b) and the credit reporting agencies that publish the information under 15 U.S.C. § 1681i(a) and 15 U.S.C. § 1681e(b). This Court has jurisdiction over this appeal according to 28 U.S.C. § 1291 because the judgment below is a final judgment of the United States District Court, disposing of all parties' claims. This case involves an appeal of the district court's order finding liability for sanctions against Fletcher according to Federal Rule of Civil Procedure 11(b)(1)-(3) and the subsequent award to Defendants to recover their attorneys' fees and costs in defending the litigation.

The district court judgment was entered on February 12, 2025. Fletcher filed his Notice of Appeal on March 11, 2025, which, according to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), became effective on the date the order disposing of the Motion was entered, February 12, 2025.

**STATEMENT OF THE ISSUES**

1. Whether the trial court violated Rule 11 and due process by imposing sanctions without giving Fletcher a meaningful opportunity to respond.

2. Whether Jaffer's pre-filing investigation, based on sworn identity theft reports and client interview, was objectively reasonable under Fifth Circuit law.

3. Whether attorney's fee awards were excessive given the early stage of the case, minimal litigation by Fletcher, and the Defendants' role in multiplying the proceedings.

## STATEMENT OF THE CASE

Robert Fletcher is a United States citizen and resident of Harris County, Texas. Fletcher reviewed his consumer credit report and noticed an unauthorized account had been opened under his name with Bridgecrest and published on his Experian credit report. This account was apparently for an automobile loan and had a balance of approximately $3,711.00. Fletcher disputed the account with Bridgecrest, but to no avail.

Eventually, Fletcher contacted the law firm of Jaffer and Associates, PLLC, to discuss his legal options. The Firm reviewed Fletcher's documentation in its investigation to determine if a viable case existed. Upon reviewing the credit report, dispute documents, and other material Fletcher submitted to the Firm, Attorney Shawn Jaffer filed a lawsuit against the Defendants in the Federal Court for the Southern District of Texas on January 31, 2024, under cause number 4:24-cv-00370. Experian was served on February 2, 2024, and Bridgecrest was served on February 2, 2024. Experian answered the suit on February 23, 2024, and Bridgecrest answered on March 22, 2024.

The parties filed a proposed case management plan on May 3, 2024. Experian filed a motion for leave to amend its answer on May 10, 2024. That same day, following weeks of unsuccessful attempts to contact Fletcher, the Firm

filed its motion to withdraw as counsel.  Bridgecrest filed its Motion for Relief under Federal Rules of Civil Procedure 11 on May 13, 2024.

On May 17, 2024, the Court held a hearing, ostensibly to set dates and deadlines in a scheduling order.  However, the hearing transformed into a motion hearing on Defendant's Rule 11 motion, only four days after it was filed and before Fletcher could file a response.  Following that hearing, the case descended into a quagmire of motion practice as parties filed numerous motions and countermotions regarding attorney fees, sanctions, and related matters.  On February 12, 2025, the Court entered an order assessing attorney fees against Jaffer and the Firm for $20,038.40 to Bridgecrest and $13,059.18 to Experian.  The Court also entered sanctions against the Firm and Jaffer.  This appeal followed.

## SUMMARY OF THE ARGUMENT

This appeal arises from a sanctions order that punished an attorney for filing a good-faith FCRA claim based on sworn identity theft affidavits and client interviews, without notice, hearing, or findings of bad faith. The District Court's sanctions violated Rule 11, due process, and Fifth Circuit precedent. If affirmed, the ruling would chill legitimate consumer claims and penalize attorneys for trusting clients and law enforcement documents. Reversal is required to preserve both procedural fairness and the integrity of Rule 11 jurisprudence.

The District Court erred by imposing Rule 11 sanctions against Jaffer without fair notice, opportunity to respond, or specific findings of bad faith. Bridgecrest filed its Rule 11 motion on May 13, 2024, and the court held a hearing just four days later, before the response deadline and without labeling it a sanction hearing or issuing a show cause order. This violated Jaffer's due process rights and contravened Rule 11's procedural requirements, Fifth Circuit precedent, and basic fairness.

Fletcher's complaint followed a good-faith, objectively reasonable pre-filing investigation. Jaffer reviewed sworn identity theft affidavits submitted to the FTC and the Houston Police Department, interviewed his client, and relied on government documents prepared under penalty of perjury. Under the "snapshot

18

rule," the investigation must be judged based on the facts known at the time of filing, not through hindsight. The trial court disregarded this binding standard.

This case presents a dangerous precedent: using Rule 11 as a shortcut for resolving factual disputes normally addressed through discovery and dispositive motions. The court effectively punished counsel for not foreseeing post-filing rebuttal evidence that was unavailable pre-suit. That approach converts sanctions into a tool for discouraging access to justice and chills legitimate consumer protection claims under the FCRA.

The fee awards under 28 U.S.C. § 1927 were likewise improper. Experian never filed a standalone motion, failed to confer under Local Rule 7.1, and presented no evidence of bad faith. The billing records lacked evidence of reasonableness or judgment, and the trial court failed to make specific findings justifying the amounts. Sanctions are meant to deter, not to provide windfalls.

**ARGUMENT**

## A.     Standard of Review

### 1.  Rule 11 Sanctions – Abuse of Discretion Review

Appellate courts review the district court's decision in a Rule 11 proceeding for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc).  A district court necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994) (citing *Cooter & Gel.*, 496 U.S. at 405, 110 S. Ct. at 2460-61).  (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

### 2.  § 1927 Sanctions – Bad Faith Required

28 U.S.C. § 1927 allows a district court to require an attorney to personally pay the excess costs, expenses, and attorneys' fees reasonably incurred because of the attorney's actions, which unreasonably and vexatiously multiply the proceedings and are reviewed for an abuse of discretion. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). However, this appeal challenges the sanctions and fee awards as violative of Appellant's constitutional right to due process under the Fifth and Fourteenth Amendments, presenting a mixed question of law and fact.

Accordingly, this Court's review of Appellant's liability for sanctions and award of attorney's fees is *de novo*. *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016) (citing *LLEH, Inc. v. Wichita Cty.*, 289 F.3d 358, 364–65 (5th Cir. 2002)). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

### 3. Inherent Power Sanctions – Heightened Threshold

"A court abuses its discretion to impose sanctions when a ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Matta v. May*, 118 F.3d 410, 413 (5th Cir. 1997). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citing *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)). "Indeed, the Supreme Court has cautioned that 'because of their very potency, inherent powers must be exercised with restraint and discretion.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)). More importantly, relevant to this case, this Court has held that "in order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith'." *Id.*; *R.T.C. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993); *In re Thalheim*, 853 F.2d 383, 389 (5th Cir. 1988); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 2465, 65 L. Ed. 2d 488 (1980). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

## 4. Due Process Violations – De Novo Review

Bad faith exists when a party knowingly or recklessly raises a frivolous argument or argues a meritorious claim to harass an opponent. *Portillo v. Cunningham*, 872 F.3d 728, 740 n.29 (5th Cir. 2017); *see also Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 561 n.4 (5th Cir. 2015) ("Bad faith implies that a litigant intentionally took a position he subjectively knew was unfounded."). When invoking its inherent power to sanction parties or their attorneys, the court must comply with the mandates of due process in determining whether bad faith exists. *Chambers*, 501 U.S. at 50. And "the threshold for the use of inherent power sanctions is high." *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (internal quotation marks and citation omitted). *See also Kennard Law P.C. v. United Airlines, Inc.*, No. 23-20430, 2024 U.S. App. LEXIS 19962 at *11 (5th Cir. Aug. 8, 2024). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

"[A] court should invoke its inherent power to award attorney's fees only when it finds that fraud has been practiced upon it, or that the very temple of justice has been defiled." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008) (internal quotation marks and citation omitted). Accordingly, "a specific finding that the [sanctioned party] acted in bad faith" is a prerequisite for imposing sanctions according to a court's inherent power. *Crowe v. Smith*, 151 F.3d 217, 236

(5th Cir. 1998). Appeals courts have reversed the imposition of sanctions where "the district court merely made general complaints about the sanctioned party." *Goldin v. Bartholow*, <u>166 F.3d 710, 722</u> (5th Cir. 1999) (citing *Elliott*, <u>64 F.3d at 217</u>). (<u>ROA.865</u>–866, Tr. 5:18–6:25, ECF No. 29).

In summary, Rule 11 Sanctions are typically reviewed under an abuse of discretion, but due process triggers de novo review. § 1927 Sanctions are reviewed under an abuse of discretion, but must show actual bad faith. Inherent authority requires a clear finding of bad faith, subject to strict limits. Due process is required in all three.

This Court, therefore, must review Rule 11, § 1927, and inherent authority sanctions for abuse of discretion—but must apply de novo review to the due process violations Fletcher has alleged. Under any standard, the absence of specific findings and failure to comply with notice and hearing requirements requires reversal. The trial court's decision constitutes an abuse of discretion under the standards established by the Fifth Circuit. Accordingly, the trial court's sanctions order must be reversed as an abuse of discretion and a violation of controlling constitutional and procedural law. (<u>ROA.861</u>–863, Tr. 2:1–4, 3:1–25, ECF No. 29).

Standard of review table:

| Issue | Standard of Review | Authority |
|---|---|---|
| Rule 11 sanctions | Abuse of discretion | *Cooter & Gell*, 496 U.S. 384 |
| § 1927 sanctions | Abuse of discretion | *Browning*, 931 F.2d at 344 |
| Inherent power sanctions | Abuse + bad faith | *Chaves*, 47 F.3d at 156 |
| Due process violations | De novo | *Goode*, 821 F.3d at 559 |

## B.     The District Court Violated Rule 11 and Due Process by Imposing Sanctions Without Notice or Hearing

The district court's imposition of Rule 11 sanctions without providing adequate notice or a meaningful opportunity to be heard violated Fletcher's and Jaffer's rights under Rule 11 and the Fifth Amendment. This case requires this Court to consider the First Amendment rights of lawyers who are employed to protect and advocate for their clients. The client should not lose the ability to bring or make certain arguments when they hire an attorney to represent them and speak on their behalf. Thus, lawyers must have a free speech right sufficient to vindicate the rights of their clients. Fletcher respectfully represents that the penalty of sanctions should not be used to limit or curb an attorney's actions where there is a legal argument available to the affected client.  It is the attorney's core function to present a client's colorable arguments/claims, and the core function of the judicial system to hear

those claims in court proceedings, even if such arguments implicate judicial error and/or the integrity of officers of the court. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

## 1.    Violation of Rule 11 Procedures and Due Process

Sanctions should not be used as a strategic tool to limit the client's ability to bring relevant arguments through a representative. Due process guarantees a right to be heard, and those basic guarantees and expectations of justice are defeated if an attorney has no right to express and vindicate clients in court proceedings due to fear of sanctions, punishment, or retaliation. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

This Court should reverse the lower court ruling because the trial judge entered a judgment finding a Rule 11 violation without providing Jaffer with an opportunity to brief a Rule 11 violation motion response, violating due process considerations.

Rule 11 of the Federal Rules of Civil Procedure explicitly requires that sanctions can only be imposed after notice and a reasonable opportunity to respond.  U.S.C.S. Fed Rules Civ Proc R 11, Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions. This requirement is reinforced by case law in the 5th Circuit, which emphasizes the necessity of due

process, including notice and an opportunity to be heard, before imposing Rule 11 sanctions. *Henderson v. Department of Public Safety & Corrections*, 901 F.2d 1288, 1293 (5th Cir. 1990); *Marlin v. Moody Nat'l Bank N A*, 533 F.3d 374, 380 (5th Cir. 2008); *Childs v. State Farm Mut. Auto. Ins. Co*., 29 F.3d 1018, 1027 (5th Cir. 1994); *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1201 (5th Cir. 1989).

Rule 11 only applies to an attorney's conduct at the time the court document is signed. Rule 11 is "[l]ike a snapshot" because it "focuses upon the instant when the picture is taken—when the signature is placed upon the document." *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 874 (5th Cir.1988).

## 2. Lack of Opportunity to Respond

The district court's finding of bad faith using new evidence without allowing Fletcher an opportunity to brief a response is inconsistent with due process and the snapshot rule. Rule 11 sanction decisions must comport with due process—notice and an opportunity to be heard*. Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d 339, 346 (5th Cir.1990); *Donaldson v. Clark,* 819 F.2d 1551, 1559–60 (11th Cir.1987) (en banc). *Veillon,* 876 at 1201; see *also Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L.Ed.2d 113 (1971) (procedural due process ordinarily requires notice and an opportunity to be heard). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

In the case of *Henderson*, the court highlighted that due process requires adequate and timely notice of the specific charges and an opportunity to address the charges in writing or orally before a neutral arbitrator. *Henderson,* 901 F.2d at 1293. Similarly, in *Marlin*, the court vacated sanctions because the district court failed to comply with the mandatory procedure set by Rule 11, which includes providing notice and a reasonable opportunity to respond. *Marlin,* 533 F.3d at 378. Additionally, in *Childs*, the court reiterated that due process requires notice and an opportunity to be heard, which can be satisfied by allowing the submission of a brief. *Childs,* 29 F.3d at 1027. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

Further, Federal Rule of Civil Procedure 12(a)(4)(A) allows Fletcher fourteen (14) days to respond to the Rule 11 Motion once filed. As this Motion was filed on May 13, 2024, Fletcher had until May 27, 2024. The trial court held a hearing on Bridgecrest's Rule 11 Motion on May 17, 2024, without giving Fletcher prior notice. ROA. 25-20086.861, 1-2. Thus, Fletcher and Jaffer's due process rights were violated twice: first in not allowing a response to be filed within the allowable time and second in holding a Rule 11 hearing without prior notice. (ROA.861–863, Tr. 2:1–4, 3:1–25, ECF No. 29).

Therefore, if a federal judge did not provide an opportunity to brief a Rule 11 violation motion and entered a judgment without allowing a response, it would

constitute a violation of due process, making an appeal likely to succeed. The trial court's disregard of this rule is reversible error. *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997).

### 3. Attorney-Client Relationship Constraints

An attorney employed to prosecute or defend a claim has no authority, contrary to his client's wishes or without his knowledge or acquiescence, to dismiss a case or to compromise it. See *United States v. Beebe*, 180 U.S. 343, 352 (1901); and *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984). The relationship between attorney and client is one of a specialized agency; the attorney-agent may not act beyond the scope of authorization granted by the client-principal. See *Breen v. Beto*, 421 F.2d 945, 950 (5th Cir. 1970). As there was a breakdown in communication between Fletcher and attorneys at Jaffer, there was no authority granted to Jaffer or any of the associate attorneys to dismiss the case as requested in Bridgecrest's motion. ROA. 25-20086.861,Baulch 2-3. Consequently, that option was unavailable to Jaffer. Amending the complaint was also an unavailable option because Fletcher was not communicative with the attorneys at Jaffer to provide additional facts allowing for amendment. ROA. 25-20086.861, 2-3. A client has recourse against an attorney who files a motion to dismiss without the client's consent, as such actions are generally impermissible

28

and may violate the attorney's professional obligations. Courts have consistently held that an attorney cannot unilaterally dismiss a case or motion without the express consent of the client, as this would impair the client's substantial rights.

In Texas, a client has several potential recourse options against an attorney who files a motion to dismiss without the client's consent. These options include seeking to set aside the dismissal, pursuing a claim for professional misconduct, and potentially filing a legal malpractice claim, depending on the circumstances and resulting harm.

Texas courts have held that an attorney does not have implied authority to dismiss a client's claim when it affects a substantial right or bars the client from bringing another suit based on the same cause of action. For example, in the *City of San Benito*, the court emphasized that an attorney's authority to nonsuit a claim is limited to situations where no substantial rights are affected. *City of San Benito v. Rio Grande Valley Gas Co.,* 109 S.W.3d 750, 758 (Tex. 2003). If the dismissal impacts the client's rights, the client may seek to have the dismissal set aside by demonstrating that the attorney acted without proper authorization.

Filing a motion to dismiss without the client's consent may constitute a violation of the Texas Disciplinary Rules of Professional Conduct. Attorneys are required to abide by a client's decisions concerning the objectives and general

methods of representation, and they must maintain communication with the client regarding material aspects of the case. Tex. R. Prof Conduct 1.02, Scope and Objectives of Representation, Tex. R. Prof Conduct Preamble, Tex. R. Prof Conduct Preamble. Unauthorized actions, such as filing a motion to dismiss without consultation, could be deemed professional misconduct under Tex. R. Prof Conduct 8.04, which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation, as well as violations of the professional conduct rules. Tex. R. Prof Conduct 8.04, Misconduct. The client may file a grievance with the State Bar of Texas, which could lead to disciplinary actions against the attorney, ranging from a reprimand to suspension or disbarment, depending on the severity of the misconduct. *Rosas v. Comm'n for Lawyer Discipline*, 335 S.W.3d 311, 316-17 (Tex. App. - San Antonio 2010).

If the unauthorized dismissal causes harm to the client, such as the loss of a viable claim for damages, the client may have grounds for a legal malpractice claim. In Texas, legal malpractice is based on negligence, requiring the client to prove that the attorney owed a duty, breached that duty, and that the breach proximately caused damages. *Veschi v. Stevens*, 861 S.W.2d 291, 292 (Tex. App. – San Antonio 1993). For instance, in *Tommy Gio, Inc.,* the court reiterated that an attorney's failure to adequately represent a client, resulting in harm, could form the

basis of a malpractice claim. *Tommy Gio, Inc. v. Dunlop,* 348 S.W.3d 503, 507 (Tex. App. - Dallas 2011). However, the client must demonstrate that the attorney's unauthorized action directly caused a loss or injury.

The duty of loyalty and consultation requires attorneys to place their clients' interests ahead of their own and to consult with clients regarding significant decisions, including overarching defense strategies. *Woodward v. Epps*, 580 F.3d 318, 327 (5th Cir. 2009), *United States v. Vasquez*, 298 F.3d 354, 360 (5th Cir. 2002). Filing a motion to dismiss without client consent may constitute a breach of this duty, potentially giving rise to a malpractice claim. However, courts have emphasized that clients cannot escape the consequences of their attorney's actions by claiming they were uninformed or did not consent. Instead, the proper recourse is to seek damages through a malpractice lawsuit. *In re Ritchey*, 512 B.R. 847, 859 (Bankr. S.D. Tex. 2014), *Pryor v. U.S. Postal Service,* 769 F.2d 281, 289 (5th Cir. 1985), *Gruppo Formstar LLC v. FM Forrest, Inc*., 587 B.R. 891, 941 (Bankr. S.D. Tex. 2018). While clients retain the right to make decisions about the objectives of representation, including settlement decisions, attorneys do not have absolute authority over case decisions.

The attorney-client relationship is a specialized agency relationship, and attorneys are generally presumed to act within the scope of their client's

authorization. However, this presumption is rebuttable. In *Kelly*, the court held that unauthorized legal actions, such as dismissing a lawsuit without the client's consent, constitute a breach of the attorney-client relationship and may result in the attorney being unable to recover fees for their services. *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex. App. - Houston 1982). This breach could also support a claim for damages or other remedies.

In summary, a client in Texas may seek to set aside unauthorized dismissal, file a grievance for professional misconduct, or pursue a legal malpractice claim if damages result. The specific recourse will depend on the facts of the case, including the impact of the dismissal on the client's rights and the extent of harm caused by the attorney's actions.

As the client remained unresponsive and the lack of communication materially impaired the attorney's ability to represent the client, the attorney may need to withdraw from the case. ROA. 25-20086.86. Rule 1.16(b) allows withdrawal if the client fails substantially to fulfill an obligation to the lawyer, such as communication, and the lawyer has given reasonable warning. Tex. R. Prof Conduct 1.16, Declining or Terminating Representation. Once Mr. Fletcher ceased responding, continued representation became ethically impermissible under Rule

1.16. Sanctioning counsel for complying with ethical obligations turns Rule 11 on its head.

Withdrawing from representation was the only remaining option Bridgecrest offered as a remedy for Jaffer to pursue. *See* Dkt. #18, at 5. When Jaffer tried withdrawing, however, Bridgecrest was still unsatisfied. *See* Dkt. #17. (One wonders if Bridgecrest would have been content had Jaffer tried filing an amended complaint, or why Bridgecrest would have included two options it was not prepared to accept in its Rule 11 motion.) Moreover, if Bridgecrest was so confident of its position, why did it not file another dispositive motion instead of a Rule 11 Motion for sanctions? Under either scenario, Jaffer took the best course of action available to him under the circumstances. Consequently, Jaffer did not act in bad faith when he sought to withdraw. This understanding of his actions is far more charitable (and accurate) regarding Jaffer's motives, rather than the trial court's inference that he was seeking to withdraw to leave the court and Bridgecrest with the problem. *See* Dkt. #52, at 2.

The trial court then reasoned that allowing Jaffer to withdraw would prejudice Bridgecrest as it would have "no recourse for the violation of Rule 11." *See* Dkt. #52, at 2. This, of course, presupposes there was such a violation in the first place. Again, the trial court provided no reasoning as to findings of fact or

conclusions of law. It appears simply to have made up its mind and reasoned accordingly to justify the predetermined conclusion. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

That Bridgecrest filed its Rule 11 Motion on May 13, 2024, and the trial court held the hearing only four days later at the Rule 26(f) conference, where only an associate appeared, making it virtually impossible for Jaffer to draft and file a reply. This failure by the trial court to afford Jaffer his opportunity to be heard was a clear violation of Jaffer's constitutionally protected rights, and it constituted an abuse of the trial court's discretion. For these reasons alone, reversal is warranted. (ROA.861–863, Tr. 2:1–4, 3:1–25, ECF No. 29).

### 4. Improper Motive and Unsupported Trial Court Findings

The district court's findings lacked evidentiary support and reflected an impermissible inference of motive. The court's order then descends into personal attacks against Jaffer's character toward the end of page 2. *See* Dkt. #52, at 2-3. The trial court stated Jaffer "betrayed" his own firm's mission statement, when there was no evidence of such. *Id*., at 3. The trial court found no evidence that Jaffer failed to conduct a reasonable background investigation when onboarding Fletcher. That the case turned out to be different than originally hoped is not a defect regarding the reasonableness of Jaffer's preliminary investigation. To be

34

sure, Fletcher offered both a police report and Federal Trade Commission affidavits, created under the penalty of perjury, to Jaffer before filing a suit. In addition, the documents Bridgecrest offered in support of its Rule 11 motion were not available to Jaffer previously. Therefore, no additional amount of investigative work would have altered the nature of the investigation of Fletcher's claims during the onboarding process. The trial court states that Jaffer had not done even a "minimal investigation" of Fletcher's claims before filing suit. *Id*. There is also no evidence supporting this assertion. Both the FTC report and police report were included as exhibits to the original complaint, demonstrating that Jaffer did conduct at least a minimal investigation. *See* Dkt. #1.

The trial court then claims Jaffer's attempt to withdraw from the case was merely an attempt to "remove himself from the problems he created." *See* Dkt. #52, at 3. Again, the trial court imputes the worst possible motive toward Jaffer without making any factual findings as to his predicament. The motion to withdraw articulates that there was a breakdown in communications with the client. *See* Dkt. #17. The trial court made no factual findings to the contrary. There was never a show cause order or similar requirement for Fletcher to appear and explain himself. Rather, the court should have ascertained whether Fletcher

had ceased all communications with Jaffer before issuing its ruling. No such finding was made. (ROA.862–863, Tr. 2:20–3:9, ECF No. 29).

The Court improperly substituted its own moral judgment for factual analysis, without record support, in violation of *Goldin* and *Elliott*. Because neither Fletcher nor Jaffer was provided with an opportunity to brief the court in writing, Fletcher and Jaffer's due process rights were violated. Here, the trial court abused its discretion by finding Jaffer liable under Rule 11 when it failed to allow him to be heard and explain his reasoning for the actions he took during the prosecution of this case. For that reason, this Court should reverse the lower court's ruling. The record reflects that the district court-imposed sanctions in violation of fundamental due process, relying on post-filing evidence without notice, hearing, or specific findings of bad faith. The court's failure to allow Fletcher and Jaffer to respond not only violates Rule 11's procedural safeguards but also undermines the fairness and legitimacy of the sanctions process. For these reasons, the judgment must be reversed. (ROA.861–863, Tr. 2:1–4, 3:1–25, ECF No. 29).

5. **Why Rule 11 Should Not Be Used to Resolve Merits Disputes**

Rule 11 is not a substitute for Rule 12(b)(6) or a Rule 56 motion. It is designed to deter abuse, not to punish lawyers for failing to foresee factual developments. Here, the court used sanctions to reach the merits before any

discovery or dispositive briefing. This contradicts Fifth Circuit precedent and invites precisely the "satellite litigation" that Rule 11 is designed to prevent.

**C.    Jaffer's Pre-Filing Investigation Was Objectively Reasonable Under the "Snapshot" Rule**

Jaffer conducted a reasonable investigation into Fletcher's claims before filing the case.  The trial court's ruling fails to outline with specificity the exact defects Jaffer allegedly failed to perform when investigating Fletcher's claim during the onboarding process.

1.    **Rule 11 Imposes a Time-Limited, Objective Standard**

When pre-filing conduct is in issue, the Fifth Circuit has identified various factors that may be considered in determining whether an attorney made a reasonable inquiry into the law or the facts, including: (1) the time available for investigation; (2) the extent to which the attorney relied on his client for factual support; (3) the feasibility of conducting a pre-filing investigation; (4) whether the attorney accepted the case from another attorney; (5) the extent development of the facts  [*6] underlying the claim requires additional discovery; (6) the complexity of the factual and legal issues involved; (7) the plausibility of the legal view espoused; and (8) the litigant's *pro se* status. *Thomas*, <u>836 F.2d at 875-76</u>; *see Childs*, <u>29 F.3d at 1026</u>. These factors are non-exclusive, and "the

determination of whether a reasonable inquiry has been made will, of course, be dependent upon the particular facts" of each case. *Thomas*, 836 F.2d at 875. The district court must adhere to the Fifth Circuit's well-established "snapshot rule," which "ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing." *Marlin*, 533 F.3d at 380 (quoting *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006)); *see also Thomas*, 836 F.2d at 874 ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken-when the signature is placed on the document."). *Garcia v. Navasota Indep. Sch. Dist.*, No. H-09-3892, 2011 U.S. Dist. LEXIS 60472, at 3-6 (S.D. Tex. 2011).

To determine whether a filing was made for an improper purpose, the court determines whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose." *FDIC*, 523 F.3d at 581. Because of the objective inquiry, a district court may read an improper motive into a document well-grounded in fact and law only under exceptional circumstances. *Id*. The key is whether "the improper purpose is objectively ascertainable." *Id.* at 580-81. See also *Lewis v. La. State Univ.*, No. 21-198-SM-RLB, 2022 U.S. Dist. LEXIS 181203, at 6 (M.D. La. 2022). Where there has not been a reasonable opportunity for further investigation or discovery, courts may deny the Rule 11 sanctions motions because sanctions are an extraordinary remedy. Fed. R. Civ. Pro.

11(b)(3). Bad faith means knowingly or recklessly advancing a claim known to be baseless. *Gate Guard Services v. Perez*, <u>792 F.3d 554, 560</u> (5th Cir. 2015). (<u>ROA.865</u>–866, Tr. 5:18–6:25, ECF No. 29).

2.    **Jaffer Relied on Sworn Law Enforcement Reports**

Fletcher's counsel did not file a Complaint in bad faith because Fletcher provided a police report under the penalty of perjury (and potential criminal charges against him) with the Houston Police Department for identity theft.  This allegedly resulted from his identity documents being stolen to open a car loan with Bridgecrest on July 12, 2023, with Report Tracking number T23006063.  Fletcher also filed an Identity Theft Report with the Federal Trade Commission on May 31, 2023, under the penalty of perjury, with Report number 160341465. Fletcher's counsel conducted a thorough interview with Fletcher, and he was adamant that he was a victim of identity theft and unequivocally maintained that he did not open the car loan with Bridgecrest. Jaffer conducted a reasonable inquiry before filing this action against Bridgecrest and Experian, and, as a result, the filing of this action was not unreasonable or vexatious conduct by Fletcher or his counsel when the case was filed under the Fifth Circuit's "snapshot rule." Jaffer relied on a police report and an FTC affidavit.  These are not inherently frivolous.

This case was filed on January 31, 2024, based on information provided by Fletcher. Jaffer then reviewed the information and conducted a reasonable investigation based on that information at his disposal to determine if there was a viable claim. Jaffer concluded there was such a claim. Even if the Court were persuaded by Bridgecrest's post-filing materials, they were not—and could not have been—part of the information available to Jaffer at the time of filing.

3. **Bridgecrest's Evidence Was Post-Filing and Non-Dispositive**

Bridgecrest cited that it submitted evidence to Fletcher's counsel on March 8, 2024. This was over a month AFTER the case had been filed. Even assuming the evidence exchanged on March 8, 2024, was dispositive of the case's lack of merit, that evidence was not available to Jaffer in January, and there is no reason to conclude that the same evidence would have been discovered had Fletcher's counsel conducted any more extensive of an investigation than what he did. Bridgecrest's documents, introduced after the filing, do not conclusively disprove the identity theft claim. At best, they raise factual disputes, not establish fraud.

Even if the Court chose to find that Fletcher's case had no reasonable grounds. It is not clear that Jaffer could have determined that. If Fletcher had the loan documents allegedly signed by him but refused to mention them or turn them over to Jaffer, there would not be a reasonable way for counsel to determine that

such documents even existed.  Therefore, those materials would not have been within the scope of the pre-suit investigation.  Jaffer could not have contacted Bridgecrest for such information before filing the suit, since no live case or controversy warranted turning the documents over to Jaffer.  Further, as identity theft was the manner Fletcher claimed the car was purchased, the likelihood that Bridgecrest had the real information on Fletcher was highly unlikely.  It would not have done anything to affect the pre-suit investigation.  Nor could Jaffer have relied on the credit reporting information, as that was the very information Fletcher claimed was defective, fraudulent, and inaccurate.

As described in the trial court's order, Bridgecrest investigated Fletcher's claim and found proof that the claims were false.  *See* Dkt. #52.  This conclusion relied on the additional evidence Bridgecrest produced after the case was filed. This evidence included a loan application and accompanying documents from the auto dealer for which the underlying claim was based.  However, Jaffer had no way of gaining this documentary evidence absent filing suit in the first place. Jaffer should not be punished for failing to review documents he would not have been privy to before Bridgecrest produced them.  Further, as outlined below, the documents Bridgecrest did produce do not necessarily preclude the identity theft

claim. They only challenge it. Consequently, there should not have been a finding of bad faith in Jaffer's actions during the pre-suit investigation.

Moreover, Jaffer relied reasonably on the documents made available to him when investigating the claims for Fletcher. The FTC report and police report were both filed with the appropriate governmental agencies. There was no reason to disbelieve Fletcher, nor was there any affirmative evidence when the case was filed that the identity theft claim was frivolous. Therefore, under the snapshot rule, this Court should reverse the trial court's determination that Jaffer's pre-suit investigation was deficient.

Bridgecrest seeks to argue the documents about the auto loan in question to prove beyond doubt that the underlying claim is meritless. Review of the documents in question shows merely that they challenge Fletcher's claim rather than conclusory refuting it. Fletcher brought this claim based on an allegation of identity theft in which his personal identifying information was used to take out an auto loan for which Fletcher did not authorize that transaction. Bridgecrest argues that the driver's license used in the auto loan application was the same as that used for Fletcher's disputes. This fact alone does not disprove Fletcher's claim, however. If Fletcher's identity had been stolen, it would be more likely than not that his license would have been used by the identity thief to apply for the loan.

The documents Bridgecrest proffers do not refute the identity theft claim, and they could even support the claim when one considers that an identity thief could have gotten a copy of the Plaintiff's driver's license. Even strong post-filing evidence cannot retroactively taint a facially plausible filing based on sworn ID theft affidavits.

The documents cited by Bridgecrest in support of sanctions—namely, that the Social Security number and email address used on the application matched Plaintiff's—**do not disprove identity theft and were not available to Plaintiff's counsel at the time of filing.** Identity thieves routinely use accurate personal identifiers, such as Social Security numbers and email addresses, to impersonate victims. Thus, the presence of matching PII in Bridgecrest's records is **entirely consistent with identity theft**, not proof against it. More importantly, Plaintiff's counsel had **no access to these internal Bridgecrest documents** before filing the suit. There was no ongoing litigation obligating Bridgecrest to disclose them, and Bridgecrest did not voluntarily produce them until **after the complaint was filed**. Under the Fifth Circuit's "snapshot rule," the reasonableness of a pre-filing investigation must be judged **based solely on the facts known at the time of filing**. *Marlin v. Moody Nat'l Bank*, <u>533 F.3d 374, 380</u> (5th Cir. 2008). Here, Plaintiff's counsel had facially valid government records—an FTC affidavit and a

police report, both signed under penalty of perjury—supporting Fletcher's identity

theft claim. Given the lack of contrary evidence available pre-suit, there is no basis

to finding that filing the complaint was objectively unreasonable or sanctionable.

### 4. The Trial Court's Order Lacked Specific Findings or Factual Support

The district court's order does not specify any additional investigatory steps

that would have been feasible or expected under the circumstances. In its order

(Dkt. #52), the trial court proposes no affirmative steps Jaffer could have

undertaken to investigate the claims Fletcher sought in his case. Reversal is

warranted when the district court fails to make specific findings justifying

sanctions. See *Goldin*, 166 F.3d at 722; *Elliott*, 64 F.3d at 217. "Sanctions must be

accompanied by findings of fact and conclusions of law sufficient to permit

meaningful appellate review." *Goldin*, 166 F.3d at 722. (ROA.865–866, Tr. 5:18–

6:25, ECF No. 29).

Under the "snapshot rule," Jaffer's investigation was reasonable based on

the information available to him. There is no objective basis for sanctions, and the

trial court's ruling must be reversed. Because Jaffer relied on facially valid, sworn

government reports, conducted a reasonable inquiry given the circumstances, and

had no access to the evidence later presented by Bridgecrest, the district court's

finding of sanctionable conduct is not only unsupported by the record, but legally

erroneous under the snapshot rule. This Court should reverse. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

## D. The Fee Awards Were Excessive, Improperly Documented, and Unsupported

The next issue regards the amount of attorney fees sought by each of the defendants. Considering the early state of the case, it seems unlikely that either Bridgecrest or Experian performed significant amounts of legal work justifying the attorney fees requested.

The attorney fees awarded by the trial court were unreasonable here because the case was still in the early phases of litigation. In fact, the parties had not even reached discovery when the Rule 11 Motion was served. Neither had the court entered a scheduling order.

### 1. Rule 11 Requires "Appropriate" Sanctions—Not Automatic Full Compensation

Rule 11 speaks in terms of an 'appropriate sanction.' What constitutes reasonable expenses within the context of Rule 11 must be considered about the Rule's goals of deterrence, punishment, and compensation. In this respect, "reasonable" does not necessarily mean actual expenses and attorney's fees. Instead, Rule 11 leaves the determination of the "appropriate sanction" to the sound discretion of the trial court. *Chapman & Cole v. Itel Container Int'l B.V.*,

865 F.2d 676, 687 n.17 (5th Cir. 1989). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

Fee applicants have the burden of showing that the hours billed are reasonable. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799). Applicants must also not be billed for work that is not reasonable. Fee applicants are thus "charged with proving that they exercised billing judgment." *Id.* "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* Where a fee applicant fails to exercise billing judgment, "a reduction of the award by a percentage intended to substitute for the exercise of billing judgment" is appropriate. *Id.*; *see also Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 388 (S.D. Tex. 2016) (reducing lodestar by 50% for lack of billing judgment); *Preston Expl. Co., LP v. GSP, LLC*, No. CIV.A. H-08-3341, 2013 U.S. Dist. LEXIS 88786, 2013 WL 3229678, at *8-9 (S.D. Tex. June 25, 2013) (20% reduction); *Peak Tech. Servs. Inc. v. Land & Sea Eng'g, LLC*, No. CIV.A. H-10-1568, 2012 U.S. Dist. LEXIS 109628, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (50% reduction). See *Clark v. Emp. Funding of Am., LLC (In re Syngenta Prods. Liab.*

*Litig.)*, No. 4:23-cv-03031, <u>2024 U.S. Dist. LEXIS 99782, at *8-9</u> (S.D. Tex. 2024). Where billing judgment is not demonstrated, courts routinely reduce the award by a set percentage, often 25% to 50%, to simulate that missing judgment." *See* Rouse, 181 F. Sup. 3d at 388, Preston Expl. <u>2013 U.S. Dist. LEXIS at *28</u>, Peak Tech., <u>2012 U.S. Dist. LEXIS 109628 at *22</u>.

Here, both Attorney Neff, a partner at her firm, and Attorney Stein, a senior associate at the same firm, were involved, leading to the billing of elevated hourly rates. However, many of the tasks performed were routine and did not justify such high rates. The Fifth Circuit's decision in *Leroy* emphasized that high hourly rates are inappropriate for routine tasks that do not require exceptional legal skill or extensive trial preparation. *Leroy v. Houston*, <u>906 F.2d 1068, 1074</u> (5th Cir. 1990). The court specifically noted that while experienced attorneys may work more efficiently, this efficiency does not justify higher rates if the tasks themselves are routine and do not demand extraordinary expertise. Lower rates have been deemed appropriate for tasks that do not demand extraordinary skill. *Rodney v. Elliott Sec. Sols., LLC*, No. 19-11890, <u>2020 U.S. Dist. LEXIS 148643, at *12</u> (E.D. La. 2020).

**2. The Fee Awards Were Excessive Given the Early Case Posture**

Bridgecrest's decision to engage both a partner and a senior associate at elevated rates does not align with the requirements of the case, which had not even

47

moved into the discovery phase. The tasks primarily involved routine pretrial preparations and motions for sanctions, which do not necessitate the specialized knowledge or strategic acumen of high-billing partner attorneys. Such staffing decisions result in an inefficient allocation of resources and an inflated fee request that exceeds the bounds of necessity and reasonableness. As established in *Hensley,* hours that are excessive, redundant, or otherwise unnecessary should be excluded from fee calculations. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1939, 1940 (1983). There should have been no compensation for hours spent in duplicative activity or spent in the passive role of an observer while other attorneys performed." *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982).

The billing records include multiple duplicative entries by partners and associates for basic docket review and correspondence. Courts routinely reduce awards where high-billing attorneys perform routine tasks without justification. See *Rodney*, 2020 U.S. Dist. LEXIS 148643 at *12. Adjusting the attorneys' fees will ensure that the awarded fees are fair, reasonable, and consistent with established legal standards.

### 3.    Billing Judgment Was Not Exercised

Neff is billing $625 an hour, and there have been duplicate billings between her and her associate, Stein. There are approximately over a dozen hours of Neff

reviewing Stein's work product. Neff's hourly rate of $625 per hour is excessive given her limited history of only 180 federal matters and the unnecessary hours billed.

Stein is billing $500 an hour, and there have been duplicate billings between him and Neff as described above. Stein's hourly rate of $500 per hour is excessive given his role as an associate counsel and the lack of years of experience, and the unnecessary hours billed.

Neff billed over $625/hour and spent hours reviewing work performed by her associate. Stein billed $500/hour but performed mostly routine tasks (e.g., drafting standard motions. There were hours of overlap between Neff and Stein, where both were billed for similar review or preparation. No indication exists that either attorney wrote off any time as inefficient or duplicative. No explanation from the district court as to why both were necessary for a case dismissed pre-discovery.

Moreover, Bridgecrest and Experian filed most of the motions and pleadings in the case. Each party filed multiple motions for sanctions and attorney fees as well as numerous supporting motions, documents, and affidavits. Fletcher had to respond to each of these to avoid prejudicing his interests until a hearing could take place. It would strain the bounds of justice to award Defendants their attorney fees

for a case where they were the drivers of the motion practice when less vexatious means existed to protect their interests. Rule 11 aims at deterrence, not compensation for excessive or inefficient litigation. Punishing Jaffer with elevated fee awards for motions that the Defendants chose to multiply contradicts that goal. The court's award, based on inflated rates, duplicative effort, and early-stage motion practice, contradicts Rule 11's deterrent aim. It incentivizes excessive staffing and unnecessary litigation rather than discouraging baseless filings. (ROA.861–863, Tr. 2:1–4, 3:1–25, ECF No. 29).

4.     **The District Court Failed to Make Specific Findings**

The trial court provided no outline or rationale for how it arrived at the fee award that it did.  The statements within the order are conclusory.  Moreover, there is nothing within the trial court's order that offers the reader any idea as to why the percentages of requested fees were awarded.  The entire award strikes the reasonable reader as arbitrary.  Therefore, this Court should reverse it. Because the district court failed to assess the reasonableness of hours billed, made no factual findings regarding necessity, and awarded fees grossly disproportionate to the early case posture, the fee award was arbitrary and must be reversed. Sanctions under Rule 11 require careful calibration to deter misconduct, not reward inefficiency.

**E.     The 28 U.S.C. § 1927 Sanctions Against Fletcher's Counsel Were Improper**

28 U.S.C. § 1927 permits sanctions only when an attorney "multiplies the proceedings in any case unreasonably and vexatiously." Sanctions under this statute are **not** appropriate for isolated filings or weak claims but require a sustained course of improper litigation conduct. *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). Courts have consistently held that **bad faith is a prerequisite** to § 1927 liability. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998). The burden of proof rests on the party seeking sanctions to show, with specificity, that the sanctioned conduct was both **objectively unreasonable** and **subjectively made in bad faith**.

The district court's § 1927 sanctions against Fletcher's counsel are unsupported by the record and must be reversed. Section 1927 applies only when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," which the Fifth Circuit interprets to require conduct that is both **excessive and undertaken in bad faith**. *FDIC v. Calhoun*, 34 F.3d at 1297; *Crowe*, 151 F.3d at 236. Here, counsel filed a single lawsuit supported by sworn identity theft reports and attempted to withdraw from the case early after losing contact with the client. The record shows **no duplicative filings, no discovery disputes, and no motions that prolonged the litigation**. Rather than multiplying proceedings, Fletcher's

counsel filed **only a complaint and a motion to withdraw**, and the case had not

even reached discovery. Courts have routinely reversed § 1927 sanctions where, as

here, **there is no pattern of abusive litigation or finding of subjective bad faith**.

See *Matta v. May*, 118 F.3d 410, 413 (5th Cir. 1997); *Baulch v. Johns*, 70 F.3d 813,

817–18 (5th Cir. 1995). The imposition of § 1927 sanctions in this context

improperly punishes zealous but reasonable advocacy and risks chilling valid

claims under consumer protection statutes.

Moreover, Experian never filed a standalone § 1927 motion or sought leave

to pursue sanctions under that statute. This procedural failure independently

warrants reversal. The Fifth Circuit has emphasized that parties must follow clear

procedural steps when seeking sanctions, including compliance with local rules.

See *Whitehead v. Food Max*, 332 F.3d 796, 805 (5th Cir. 2003) (en banc).

Experian failed to confer under Local Rule CV-7, never articulated which acts

multiplied proceedings, and presented no evidence that counsel acted with reckless

disregard or bad faith intent. Sanctions imposed sua sponte without adequate notice

or briefing contravene due process and require reversal. See *In re Goode*, 821 F.3d

553, 559 (5th Cir. 2016).

Because the record lacks any conduct that multiplied proceedings or

reflected bad faith, and because Experian failed to properly move for sanctions, the

district court's § 1927 order must be vacated or reversed.

Sanctions under § 1927 require a finding of bad faith or conduct that is both objectively unreasonable and vexatious. Mere negligence or even meritless litigation is not enough. *Browning v. Kramer*, 931 F.2d at 344. Experian was not entitled to attorney fees under 28 U.S.C. § 1927 because it was the party filing multiple motions, thereby driving up attorney fees and litigation costs. Additionally, Experian failed to comply with Local Rule 7.1 regarding conferring with Fletcher to resolve the contested matters.

1.    **Sanctions Require Specific Findings of Bad Faith**

Title 28 U.S.C. § 1927 requires a showing of knowing and reckless conduct.

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so **multiplies the proceedings** in any case **unreasonably and vexatiously** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). The proper exercise of a court's authority to impose sanctions against an attorney under 28 U.S.C. § 1927 depends on a determination that the attorney has acted in bad faith. *See Chambers*, 501 US at 49-50. Bad faith is assessed under a standard requiring a showing of **knowing or**

**reckless conduct**. *Id*. (emphasis added). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

> The decision to award attorney's fees under 28 U.S.C. § 1927 is committed to the Court's discretion. *Thomas v. Capital Sec. Servs., Inc.*, 812 F.2d 984, 990 (5th Cir. 1987). Sanctions under this statute must be predicated on actions that are both **"unreasonable" and "vexatious."** *Travelers Ins. Co. v. St. Jude Hosp., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994). To find that an attorney's conduct is unreasonable and vexatious, there must be **evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.** *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (citations omitted). Section 1927 "is to be strictly construed, and [*15] **sanctions may not be imposed for mere negligence on the part of counsel.**" *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995) (citing *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir.1991)). Finally, **"[p]unishment under this statute is sparingly applied."** *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996) (citing *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994) (additional citations omitted)). (emphasis added).

*Thompson v. S & S Recovery, Inc.*, No. 1:12CV77-LG-JMR, 2013 U.S. Dist. LEXIS 133443, at *14-15 (S.D. Miss. Sep. 18, 2013). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

It is well-settled law in the Fifth Circuit that to impose sanctions under § 1927, there must be "**evidence of bad faith, improper motive, or reckless disregard** of the duty owed to the court." *Edwards*, 153 F.3d at 246 (emphasis

added). Instructing district courts to impose sanctions under § 1927 *sparingly*, the

Fifth Circuit held:

> Punishment under this statute is **sparingly** applied, and
> "except when the **entire course of proceedings were**
> **unwarranted and should neither have been**
> **commenced nor persisted in**, an award under 28 U.S.C.
> § 1927 may not shift the entire financial burden of an
> action's defense." *Browning v. Kramer*, 931 F.2d 340,
> 345 (5th Cir.1991). **We therefore require a detailed**
> **finding that the proceedings were both**
> **"unreasonable" and "vexatious."** *FDIC v. Conner*, 20
> F.3d 1376, 1384-85 (5th Cir.1994).

*F.D.I.C. v. Calhoun*, 34 F.3d at 1297 (emphasis added). (ROA.865–866, Tr. 5:18–

6:25, ECF No. 29). The statute, however, does not apply when an attorney has

represented his client "with vigor." *Mercury Air Group, Inc. v. Mansour,* 237 F.3d

542, 549 (5th Cir. 2001). Under § 1927, "attorneys have been held accountable for

decisions that reflect a reckless indifference to the merits of a claim." *Coghlan v.*

*Starkey*, 852 F.2d 806, 814 (5th Cir. 1988) (quoting *Reliance Ins. Co. v. Sweeney*

*Corp.*, 253 U.S. App. D.C. 183, 792 F.2d 1137, 1139 (D.C. Cir. 1986)).

In determining the amount of the § 1927 sanction, the Court considers three

factors: (1) whether there is a connection between the amount of monetary

sanctions imposed and the sanctionable conduct by the violating party; (2) whether

the costs or expenses claimed by the aggrieved party are "reasonable," as opposed

to self-imposed, mitigable, or the result of delay in seeking court intervention; and,

(3) whether the sanction is the least severe sanction adequate to achieve the purpose of § 1927. See *Topalian v. Ehrman*, 3 F.3d 931, 936-37 (5th Cir. 1993). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

"Because of the potency of inherent powers and the limited control of their exercise…they must be used with great restraint and caution." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 86 F.3d 464, 467 (5th Cir. 1996). The district court's order imposing monetary sanctions on Jaffer contains no mention of "bad faith," let alone a "specific finding." Bad faith includes "when the party practices a fraud upon the court or delays or disrupts the litigation or hampers a court order's enforcement." *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 867 (5th Cir. 2021). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

2.    **Jaffer Did Not Multiply Proceedings**

Here, in this action, Fletcher's counsel has not unreasonably or vexatiously multiplied the proceedings in this case. The Defendant has not shown clear and convincing evidence that every facet of the litigation of this case was patently meritless.  Nor has Experian shown that Fletcher's counsel lacked a reason to file the lawsuit and that Fletcher's counsel wrongly persisted in the prosecution of this lawsuit. Instead, Fletcher brought a meritorious claim under the FCRA that is still not meritless.

The record is clear that the only filings Plaintiff made with this Court were the filing of the:

1. Complaint (ECF# 1) on January 31, 2024.

2. Court ordered Joint Discovery/Case Management Plan under Rule 26(f) (ECF# 15) on May 3rd, 2024.

3. Plaintiff's Motion to Withdraw as Counsel (ECF# 17) on May 10, 2024.

4. Response to Bridgecrest Credit Company, LLC's ("Bridgecrest") Motion for Relief Under Rule 11 (ECF# 23) on May 29, 2024.

5. Notice of Appeal (ECF# 24) on May 29, 2024.

6. Plaintiff's Court ordered Response to Bridgecrest's Motion for Attorneys' Fees Under Rule 11 (ECF#39) on June 21, 2024.

7. Plaintiff's Response to Defendant's Motion for Attorneys' Fees as a Discretionary Sanction by Defendant Experian Information Solutions, Inc. (ECF#40) on June 24, 2024. and

8. Plaintiff's Amended Response to Bridgecrest's Motion for Attorneys' Fees under Rule 11 and Motion to Vacate Court's Entry of Rule 11 Sanctions Against Plaintiff's Counsel (ECF#41) on June 27, 2024.

Careful review of the record shows the defendants filed most of the pleadings in this case, many of which were needless, but all of which Fletcher had

to respond to preserve his rights under the law. The evidence on the record shows the defendants were the parties vexatiously multiplying litigation in this case. Fletcher did not serve discovery requests or file any motions of its own with the Court except a single two-page Motion to Withdraw as Counsel. There is no evidence on the record that Fletcher or his counsel multiplied the proceedings in this case in an unreasonable and vexatious manner. Considering the early phase of the case, the amount of litigation for which Fletcher was responsible was slight.

The parties were required by the trial court to submit a Rule 26f Joint Discovery and Case Management Plan. Fletcher and his counsel were ordered by the trial court to file a response to Bridgecrest's Motion for Attorneys' Fees under Rule 11. Fletcher's Response to Bridgecrest's Motion for Relief Under Rule 11 was a matter of right under the Rules and not a multiplication of proceedings. Fletcher filed a Notice of Appeal in this case because it is Fletcher and his counsel's position that the Court's Order granting Rule 11 sanctions was an abuse of discretion. After all, the trial court did not issue a show cause order and denied Fletcher and his counsel due process. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

### 3.    The Litigation Conduct Was Reasonable and Good-Faith

Lastly, the Motion to Withdraw as Counsel was a short two-page Motion seeking the Court's permission to withdraw from representation since Fletcher

ceased all communications with his counsel. This motion was not filed in bad faith or to multiply the proceedings, but to notify the trial court of the breakdown in communication between Fletcher and his counsel.

For these reasons, there is no evidence on the record that Fletcher or his counsel multiplied the proceedings in this matter.

Experian does not cite any specific conduct in its motion against Fletcher or his counsel that establishes Fletcher's or his counsel's conduct was unreasonable and vexatious. Experian had the burden of showing to this Court that Fletcher or his counsel's conduct was taken in bad faith or for an improper purpose, but has failed to establish either. Critically, the district court failed to make the specific findings of bad faith required under Chambers and its Fifth Circuit progeny, rendering the sanctions constitutionally infirm and warranting reversal. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

Fletcher's counsel did not file a Complaint in bad faith because Fletcher provided a police report under the penalty of perjury (and potential criminal charges against him) with the Houston Police Department for identity theft. This resulted from his identity documents being stolen to open a car loan with Bridgecrest on July 12, 2023, with Report Tracking number T23006063. Fletcher also filed an Identity Theft Report with the Federal Trade Commission on May 31,

2024, under the penalty of perjury with Report number 160341465. Fletcher's counsel conducted a thorough interview with Fletcher, and Fletcher was adamant he was a victim of identity theft and unequivocally maintained he did not open the car loan with Bridgecrest. Jaffer conducted a reasonable inquiry before filing this action against Bridgecrest and Experian, and, as a result, the filing of this action was not unreasonable or vexatious conduct by Fletcher or his counsel.

**4.      Experian Failed to Confer as Required by Local Rule 7.1**

Experian's motion for relief under 28 U.S.C. § 1927 also suffers from a significant procedural defect in that Experian never conferred with Fletcher regarding the relief sought.

Local rules 7.1(D) of the Local Rules of the Southern District of Texas require that opposed motions "[e]xcept for motions under Federal Rules of Civil Procedure 12(b), (c), (e), or (f) and 56, contain an averment that (1) The movant has conferred with the respondent and (2) Counsel cannot agree about the disposition of the motion."  Local rules have the force of law, and courts regularly deny or strike non-compliant motions. *Holloway v. Hornsby*, 23 F.3d 944, 946 (5th Cir. 1994) (district courts must enforce their local rules). No such conference between Experian and Fletcher took place.  Careful review of Experian's motion for attorney fees (Dkt. #33) and Experian's amended motion for attorney fees (Dkt.

#35) does not even contain a certificate of conference claiming to have conferred with Fletcher's counsel on this matter. Experian should have contacted Fletcher's counsel to determine the best way to manage the issue of potential attorney fees. Had Experian sent over their attorney fees billing records and supporting documents, this could have started the negotiating process without court intervention. Instead, Experian simply filed its motions on the coattails of Bridgecrest's motion for sanctions without any meaningful discussions with Fletcher's counsel. A district court abuses its discretion by imposing § 1927 sanctions without making the specific findings required by Fifth Circuit precedent. (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

### F. The Court Made No Specific Findings Supporting Its Sanctions Order

The requirement of specific findings serves a critical dual purpose: (1) it protects parties from arbitrary punishment, and (2) it facilitates meaningful appellate review. A conclusory sanctions order undermines both purposes. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1162 (5th Cir. 1988) (importance of some explanation for appellate review). Moreover, the trial court must describe specific conduct that appears to violate Rule 11(b) and explain the basis for the sanction chosen. *Jones*, 460 F.3d at 1008, *Pioneer Bank & Trust v. Reynick*, 2009 SD 3, 4 (S.C. SD 2009). The degree and extent to which specific explanation must be

contained in the record will vary according to the circumstances of the case, including the severity of the violation, the significance of the sanctions, and the effect of the award. *Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990). (ROA.865–866, Tr. 5:18–6:25, ECF No. 29).

In the case of *Willy*, the 5th Circuit held that while specific findings and conclusions are not required in all Rule 11 cases, some explanation is ordinarily required when the basis and justification for the trial judge's Rule 11 decision are not readily discernible. *Willy*, 855 F.2d at 1173. This indicates that while detailed findings are not always necessary, some level of explanation is typically expected to facilitate appellate review and ensure the rational exercise of discretion. *Pioneer Bank & Trust,* 2009 SD at 6. The lack of specific findings deprived Appellant of the opportunity to respond meaningfully or correct the record, violating the core tenets of procedural due process enshrined in both Rule 11 and constitutional jurisprudence.

Here, there was no specific finding of bad faith on which the trial court based its order, only vague assertions of conduct insinuated to be bad faith. The court's order states that Jaffer should have detected that the case was without merit, but it offers no specific actions he could have taken to determine that. *See* Dkt. #52. The order states that the applicable statute of limitations has run, but it

does not state how the court came to that conclusion. *Id.*, at 1. The order claimed

Bridgecrest found proof that the claim was false, but that was not a definitive

conclusion because the evidence was open to competing interpretations. *Id.* The

chosen conclusion was merely an assertion made by the Defendants. The trial

court issued no findings of fact or conclusions of law supporting the given

conclusion. The court then states Jaffer "refused" to dismiss the lawsuit, but there

was no evidence of such a refusal, either. *Id.* Jaffer did what he could to remedy

the situation as requested in Bridgecrest's Rule 11 Motion—namely, to dismiss the

claim, amend the complaint, or withdraw from representation. *See* Dkt. #18, at 5.

The trial court made no specific findings supporting its Sanctions Order. The

Court's order lacks the required specificity. In *Goldin*, the Fifth Circuit reversed a

sanctions award because the trial court's order lacked specificity and failed to

justify the sanction with detailed reasoning. *Goldin,* 166 F.3d at 722 (5th Cir.

1999). The same flaw is present here. A court's failure to articulate the basis for a

Rule 11 sanction is itself an abuse of discretion where the sanctioned conduct is

not facially egregious or frivolous. Without findings, the appellate court cannot

assess the legitimacy or proportionality of the sanction. (ROA.865–866, Tr. 5:18–

6:25, ECF No. 29).

# CONCLUSION

Fletcher and every other lawyer should have the right to uphold the honor of the legal profession and pursue their clients' cases without fear. Unfortunately, the trial court did not afford Jaffer that courtesy when it deprived him of the chance to explain his actions. By failing to issue a show cause order outlining the exact issues to be addressed, the trial court effectively denied Jaffer the procedural protections guaranteed by Rule 11 and the Constitution. Defendants then began firing off motion after motion to drive up attorney fees with the expectation that they would recoup all that money. The trial court abused its discretion in issuing an order without any specific findings of fact that justified holding Attorney Jaffer a bad-faith actor. This alone warrants reversal.

Sadly, the trial court's abuses did not end there. By failing to outline specific actions Jaffer could have taken to perform a more sufficient pre-suit investigation, Fletcher's firm is left wondering how to assess future cases. Moreover, the lack of access to certain documents made such an investigation impossible in the case at bar. Given the circumstances, Jaffer conducted the best pre-suit investigation available to him. Moreover, allowing sanctions under these circumstances would chill zealous advocacy, discourage reasonable reliance on client statements and official reports, and undermine the very standards Rule 11 was designed to protect.

The trial court also abused its discretion in assessing exorbitant attorney fees against Fletcher's counsel when the case was still in the early phases of litigation. Discovery had not started, no scheduling order was in place, and none of the parties had done much in the advancement of the litigation. The fees charged by Neff and Stein were vastly overstated, and Bridgecrest should not be awarded such expansive fees because the behavior being punished was not done in bad faith.

Bridgecrest and Experian filed most of the motions and pleadings in the case. Each party filed multiple motions for sanctions and attorney fees as well as numerous supporting motions, documents, and affidavits. Fletcher had to respond to each of these to avoid prejudicing his interests until a hearing could take place. It would strain the bounds of justice to award Defendants their attorney fees for a case where they were the drivers of the motion practice when less vexatious means existed to protect their interests.

For the foregoing reasons, the Court should:

1. Reverse the sanctions order in full;

2. Vacate the attorney's fee award to both Defendants; and

3. Remand, if necessary, with instructions that any future sanctions comply with Rule 11's procedural safeguards and Fifth Circuit precedent.

SUBMITTED BY:

*/s/ Heather Hersh*

Heather Hersh

Texas Bar Number 24025426

Jaffer & Associates, P.L.L.C.

5301 Alpha Road, Suite 80-5

Dallas, TX 75240

T: (214) 945-0000

F: (469) 669-0786

heather@jaffer.law

## CERTIFICATE OF SERVICE

I certify that on June 12, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

*/s/ Heather Hersh*

Heather Hersh

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of the FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: This document contains 12,653 words.

2. This document complies with the typeface requirements of the FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Version 2503 in 14-point font in Times New Roman.

*/s/ Heather Hersh*
Heather Hersh